UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GEZA TOTH,

        Petitioner,        Case No. 2:14-cv-130

v.        Honorable R. ALLAN EDGAR

PAUL STANAWAY,

        Respondent.
_____/

## **MEMORANDUM AND ORDER**

Petitioner Geza Toth filed this petition for writ of habeas corpus under 28 U.S.C. § 2241 for his release from the custody of the Department of Homeland Security, United States Immigrations and Customs Enforcement (ICE). Petitioner, a citizen of Hungary, entered the United States in 1957 at the age of six along with his parents. On January 13, 1959, Petitioner became a lawful permanent resident of the United States. In 2004, Petitioner was convicted of various counts of criminal sexual conduct, and arson. Petitioner was taken into custody by ICE on June 3, 2013, upon being released from his incarceration for these offenses. On August 8, 2013, an immigration judge issued a final order of removal for Petitioner. On August 13, 2013, ICE Enforcement and Removal Operations sent a travel document request packet on behalf of Petitioner to the Hungarian Consulate. The Hungarian Consulate requested that Petitioner be placed on the Hungarian birth registry. No travel documents could be issued until Petitioner was placed on the Hungarian birth registry. The process according to the Hungarian Consulate would take six months. Contacts were made with the Hungarian Consulate on September 13, 2013, October 15, 2013, and October 21, 2013.

Each time, ICE was informed that the Hungarian Consulate was waiting to verify whether the Hungarian Ministry of Interior placed Petitioner on the birth registry. On October 29, 2013, ICE issued a decision to continue Petitioner's detention.

ICE contacted the Hungarian Consulate on November 13, 2013, December 2, 2013, December 6, 2013, January 17, 2014, and February 3, 2014. ICE learned that the travel document request was still pending approval. On January 27, 2014, Deportation Officer Joseph Camaj requested support from ICE's Removal Support and Coordination Branch in Washington D.C. ICE continued Petitioner's custody on February 6, 2014, because ICE was still in the process of obtaining travel documents and due to Petitioner's violent criminal history.

ICE contacted the Hungarian Consulate to inquire about Petitioner's travel document status on February 18, 2014, March 4, 2014, March 17, 2014, March 24, 2014, April 22, 2014, April 29, 2014, May 19, 2014, May 27, 2014, and May 28, 2014. A decision to continue Petitioner's detention was made on May 28, 2014, because Petitioner's removal was expected to occur in the foreseeable future.

On May 28, 2014, the Hungarian Consulate confirmed that the Hungarian Ministry of the Interior verified Petitioner's place of birth. ICE was advised that the Hungarian Ministry of Interior still needed to verify that Petitioner was registered as a Hungarian citizen before the Consulate could issue travel documents to Petitioner. On June 30, 2014, ICE learned that the Hungarian Ministry of Interior verified Petitioner's citizenship and the Consulate requested that Petitioner complete three forms. Petitioner was sent the forms by email on June 30, 2014. The forms were written in Hungarian and because Petitioner is unable to read or write in Hungarian new forms written in English were provided. It is not clear from the record the exact status of those forms at this time.

Petitioner maintains that pursuant to *Zadvydas v. Davis*, 533 U.S. 678 (2001), six months is the presumptively reasonable period during which the ICE may detain aliens in order to effectuate their removal. Petitioner claims that his continued detention is unlawful and that he is entitled to release from custody pursuant to § 2241. An alien's detention pending removal from the United States is governed by Section 241(a) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1231(a). The law provides that when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days. 28 U.S.C. § 1231(a)(1)(A). During the removal period, the alien must be detained. 28 U.S.C. § 1231(a)(2). If the alien has not been removed within the 90 day period, the alien shall be subject to supervision under regulations prescribed by the Attorney General. 28 U.S.C. § 1231(a)(3). However, the statute provides that an alien who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period. 28 U.S.C. § 1231(a)(6).

In *Zadvydas v. Davis*, the United States Supreme Court addressed the legality of post-order detention in the cases of two aliens previously admitted to lawful permanent resident status, but subsequently ordered deported. *Id.*, 533 U.S. at 684. The Court held that the "presumptively reasonable period of detention" in such cases was six months. *Id.* at 701. The Court stated that "[a]fter this six month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence to rebut that showing." *Id.* The Court further noted that for the detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* Finally, the Court held that not every alien

must be released after six months, and that an alien may be confined until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future. *Id.*

In *Ly v. Hansen*, 351 F.3d 263 (6th Cir. 2004), the Sixth Circuit held that removable aliens may be detained for a time reasonably required to complete removal proceedings in a timely manner. *Id.* at 268. Should the process take an unreasonably long time, the detainee may seek relief in habeas proceedings. *Id.; Habtegaber v. Jennifer*, 256 F. Supp. 2d 692, 696 (E.D. Mich. 2003). The post-order custody of deportable aliens such as Petitioner is reviewed under the procedures set forth at 8 C.F.R. §§ 241.4 and 241.13. The court notes that § 241.13 establishes procedures to determine whether there is a significant likelihood that an alien will be removed from the United States in the foreseeable future.

Respondent contends that Petitioner has not met his burden of showing that there is no significant likelihood of his removal from the United States within the foreseeable future. As noted by Respondent, the aliens in *Zadvydas* could not be deported because one was from Cambodia, a country with which the United States has no repatriation agreement, and the other was born in a refugee camp, so was not a citizen of any country. *Id.* at 684, 686.

Petitioner argues that due to the delay in obtaining travel documents it is not likely that he will be removed to Hungary in the foreseeable future and there exists no special circumstances to justify his continued detention. Further, Petitioner argues that despite ICE's efforts, ICE has not been able to obtain travel documents for Petitioner and the Hungarian Consulate has not been particularly accurate in predicting how much time it could take to obtain certain documents or information from the Hungarian Ministry of the Interior. However, federal courts have held that mere bureaucratic delay in the detainee's home country in processing the request for a travel document is insufficient

4

to show that there is no significant likelihood of removal. *Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1366-67 (N.D. Ga. 2002); *Khan v. Fasano*, 194 F. Supp. 2d 1134, 1137-38 (S.D. Cal. 2001).

It is Petitioner's initial burden to show that there is "no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, at 701. Petitioner has the burden of providing this court with a good reason to believe that no such likelihood of his removal exists. *Id.* Once Petitioner has met this burden, the government must respond with evidence sufficient to rebut that showing. *Id.*

Petitioner has not provided the court with any evidence that could support a "good reason to believe" that his removal is unlikely in the reasonable foreseeable future. Petitioner's sole reason for his habeas request is that his detention had continued for over eleven months at the time he submitted his Petition. Here, unlike in *Zadvydas* there exists no institutional barrier to Petitioner's removal. This is not the situation presented in *Zadvydas* which involved two aliens with criminal records and the potential of permanent confinement. Neither of the aliens in *Zadvydas* could be repatriated to their native countries.

Petitioner has presented no evidence that could support a conclusion that his removal is unlikely in the reasonably foreseeable future. Instead, the government has established that Petitioner's removal is likely in the foreseeable future. There are no institutional barriers to removal. The Hungarian government has indicated that travel papers will be issued and the process has moved forward. The reason that travel papers have not been issued at this point is simply due to bureaucratic delay by the Hungarian government and the need to verify that Petitioner was born in Hungary and is a citizen of Hungary. In fact, ICE has shown in that Petitioner's removal is likely in the foreseeable future.

Accordingly, the Petition is dismissed without prejudice with the right to file a new petition if circumstances change.

A Judgment consistent with this Memorandum and Order will be entered.

SO ORDERED.


Dated: 8/14/2014 	/s/ R. Allan Edgar
	R. ALLAN EDGAR
	UNITED STATES DISTRICT JUDGE